OPINION
Plaintiffs-appellants Janet and Jacob Bohland appeal the May 9, 2001 Judgment Entry of the Richland County Court of Common Pleas which granted summary judgment against them. Defendants-appellee is the Carrols Corporation.
 STATEMENT OF THE CASE AND FACTS
On May 17, 1997, appellants were business invitees at a Burger King Restaurant located at 1380 Lexington Avenue in Mansfield, Ohio. At the time, the restaurant was owned by appellee. While visiting the restaurant, Mrs. Bohland used the restroom. As she exited the bathroom stall, Mrs. Bohland claims she slipped in some liquid which had accumulated near the wall of the toilet stall. Mrs. Bohland did not fall to the ground, but she claims she struck her shoulder on the frame of the door, causing her injury.
During her discovery deposition, Mrs. Bohland testified she had no problem seeing, and observed nothing on the floor as she entered the restroom or the stall. Mrs. Bohland testified she never saw what she slipped on, did not know where the substance came from, and had no idea how long it had been there. However, in the errata sheet attached to Mrs. Bohland's deposition, she stated she did remember seeing "wetness" on the floor after she slipped.
Mrs. Bohland informed the manager, Laura Russell, of the incident, and Ms. Russell went immediately to the ladies room to investigate. In an affidavit attached to appellee's motion for summary judgment, Ms. Russell stated she found no water anywhere on the restroom floor. Ms. Russell further stated the area was inspected by restaurant employees every half hour throughout the day; there were no reports of water on the floor or any other problems with the restroom facilities prior to the incident.
Appellant also deposed Andrea Hawkins, a cashier at the Burger King on the date of the incident. Ms. Hawkins testified she cleaned the restroom earlier in the day when she came in, but she did not return to the restroom after appellant's slip incident.
On March 25, 1999, appellants filed their complaint.[1] Appellee filed its answer on May 3, 1999. Appellee claims to have filed a motion for summary judgment on February 10, 2000. In an April 20, 2000 Judgment Entry, the trial court granted appellee's motion for summary judgment.
Appellants timely filed their notice of appeal. In a January 31, 2001 Opinion, this Court reversed the judgment of the trial court and remanded the action because the motion for summary judgment at issue did not bear a file stamp of the clerk of courts.
On March 28, 2001, appellee re-filed its motion for summary judgment. In its motion, appellee maintained the record did not demonstrate the required elements for a slip and fall case where the slip was caused by a foreign substance. Appellants filed its memorandum in opposition to appellee's motion for summary judgment. In a May 9, 2001 Judgment Entry, the trial court again granted summary judgment in favor of appellee. It is from this judgment entry appellants prosecute their appeal, assigning the following error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS, JANET AND JACOB BOHLAND, IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE, CARROLS CORPORATION, ON THE ISSUE OF LIABILITY.
 I
In their sole assignment of error, appellants maintain the trial court erred in granting summary judgment in favor of appellee. Specifically, appellants maintain genuine issues of material fact exist relating to appellee's duty of care to maintain its business premises in a reasonably safe condition for the intended use of its invitees. Appellants maintain summary judgment was improperly granted because genuine issues of material fact existed as to whether: 1) there was standing water on the floor of appellee's restroom; 2) appellee or its employees were responsible for the existence of the alleged standing water; 3) appellee had notice of the alleged standing water on the restroom floor; and 4) the alleged standing water was open and obvious.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court.[2] Civ.R. 56(C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial.[3]
A shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so as not to unreasonably expose its customers to danger.[4] However, a business owner is not an insurer of customer's safety.[5] In Ohio, a plaintiff in a premises liability action must identify or explain the reason for the fall.[6]
As we stated in Spognardi v. Scores of Mansfield, Inc.:
 While we do not require plaintiffs in all incidences to have direct evidence showing how a hazardous condition occurred, it would be unreasonable for this Court to presume whenever there is a wet spot on the floor of a restaurant, it was caused by the owner or occupier. Without more evidence, we cannot infer appellee caused the wet spot.[7]
Where an injury is due to a hazardous condition not created by the business owner, a plaintiff must show the business owner had, or in the exercise of ordinary care, should have had, notice of the hazard for a sufficient time to enable the owner to remove it or warn patrons about it.[8] Evidence of the length of time the hazard existed is necessary to support an inference an owner had constructive notice.[9]
Accordingly, to establish a property owner's negligence, appellants herein had the burden of proving one of three things: 1) appellee or its employee caused the substance to be placed on the floor; 2) appellee or its employees knew of the presence of the foreign substance on the floor and failed to remove it; or 3) the substance had been on the floor long enough that appellee should have discovered and removed it in the exercise of ordinary care.[10]
In its motion for summary judgment, appellee maintained Mrs. Bohland's testimony clearly and unequivocally stated she did not know where the substance came from, was not positive what the substance was, and did not know how long the substance was on the floor before the incident. Appellee maintained Mrs. Bohland had no evidence of how long the substance had been on the floor, and provided no testimony which would give rise to any inference the substance had been there for any specific or sufficient period of time to result in constructive notice of it. Therefore, appellee's motion for summary judgment claimed appellants were unable to prove a premises liability slip/fall case.
Appellants first maintain a genuine issue of material fact exists as to whether there was standing water on appellee's restroom floor. Even assuming there was standing water on the floor, this issue is not dispositive of this appeal. Accordingly, for the purposes of this argument, we, like the trial court, will assume there was standing water and/or a substance on the floor in the restroom.
Appellants next maintain a genuine issue of material fact exists with regard to whether appellee or its employees were responsible for water or a liquid substance on the floor in the restroom. Specifically, appellants point to the testimony of Andrea Hawkins for the proposition that water routinely fell onto the floor in the women's restroom when the toilet was flushed. Appellants also maintains a genuine issue of material fact exists as to whether appellee had constructive notice of the water or substance on the restroom floor. Appellants argue appellee's failure to conduct scheduled maintenance of the restroom every twenty minutes resulted in its constructive knowledge of the hazardous condition. Our review of Ms. Hawkins' testimony does not support these conclusions.
Ms. Hawkins testified she had noticed the toilets in the men's and women's restroom continuously flushing at some point during her three year employment with Burger King.[11] Although it is not entirely clear, it appears Ms. Hawkins testified when this continuous flushing occurred, she would see "a few drops" of water dripping down either where the handle was located, or around the "metal thing, the little pipe that goes down to the ground."[12] As pointed out by appellee in its motion for summary judgment, at no time does Ms. Hawkins testify water routinely fell to the floor when the toilet was flushed normally, or that there was a problem with the toilet on the day of the incident. In fact, Ms. Hawkins was unable to remember the condition of the toilets or the bathroom on the date of the incident.
The following colloquy from Ms. Hawkins' deposition demonstrates Ms. Hawkins confusion on the relevant event herein:
 Q. Do you remember the customer telling you that she had been hurt or do you remember hearing her tell somebody else that she got hurt?
A. I can't recall that.
Q. Okay.
 A. If I could, I would tell you exactly what she said, but I can't remember that.
 Q. Do you remember if you heard that she had been hurt in the woman's restroom?
 A. Yes. The customer said someone had fell, somebody fell here, and they were pointing towards the woman's restroom. See, the women's restroom was here. Towards the back was the men's restroom.
 Q. Do you remember going into the women's restroom after that?
A. No. Like I said, I stayed up front.
 You don't remember going into the women's restroom at any time that day?
 A. I went in earlier that day to clean it when I came in. I make sure the restrooms are clean before customers come in for that day, especially my shift and before the lunch-hour rush.
 Q. Any problem with water collecting on the floor of the women's restroom?
 A. I don't — like I said, I don't remember when Burger King — what year, but I remember the toilets. The urinal in the men's restroom used to keep flushing over and over. And the women's toilet kept flushing, because I kept hearing the noise. I could hear it from the outside dining room.
* * *
Q. And do you remember hearing that on May 17th, 1997?
 A. I can't guarantee it was May 17th. I don't remember when, but I remember it happening. I can tell you that much.
* * *
 Q. You remember there being water like that on the floor of the women's restroom after Mrs. Bohland was injured?
 A. No, because I didn't go in there. I didn't go to the restroom after that. I didn't go to the restroom after that.
 Q. How frequently did you observe the water collecting around the rim of the toilet in the women's restroom?
 A. Just that once when I went in. Because I'm pretty sure I worked 10:00 to 4:00 that day, because I knew we had the this lunch rush. And I said, I want to make sure that the tables are clean before we get the lunch rush. They tell us to check every 20 minutes, but that store wasn't a very busy store. I said, I'm just going to check this once. And later, after the rush, I check everything is right in both restrooms, maybe 2:00, 3:00, 4:00, somewhere in there. But I never went back in there then, because when the customer said that happened, I just stayed up front.
 Q. All right. You do remember checking at least one time before Mrs. Bohland was injured; is that true?
 A. Yeah. I checked when I came in. When I clocked in, I said, I'm going to check restrooms.
* * *
 Q. I'll rephrase the question. You said that you checked the floor the day that the person got injured in the women's restroom?
 A. Yeah. I didn't go just check the floor. I went in there and looked at everything. I didn't look at the floor. I just checked to make sure the restroom was clean, nothing was on the floor, and everything like that.
Q. And what time was that?
 A. 10:30, 11:00, somewhere around there. I clocked in at 10:00.
 Q. And you didn't check it again until around 2 o'clock; is that correct?
 A. Probably 2:30, 3:00, probably later than that, because I didn't check it the way I should have.
 Q. Are you aware if anybody else checked it after you checked it around 10:30?
A. No, hu-huh.
 Q. Are you aware if anybody checked it between 10:30 and the time that the woman fell in the women's restroom?
A. Hu-huh, I don't remember.
 Q. Well, I want to make sure you're saying you don't remember anybody checking it or you know that nobody checked it.
 A. I don't remember anybody checking it. I mean, like I said, I was on the first register where people walk in the door. They was responsible for me waiting on them. I don't just leave my register and just go whenever. If I do leave, I have to go to the restroom myself, I ask someone to cover me.
 Q. I want to make sure I understand. You're saying when you checked about 10:30, you remember there being a little water in the' women's restroom around the rim of the toilet? Is that what you're saying?
 A. Yeah, a little bit. Not much. It settled down. The way the floor is made, it sinks down and drains in.
 Q. Just a little bit of water about 10:30 on May 17th 1997, correct?
 A. I'm not sure that is the date. All I remember is that there was a little bit of water.
 Q. It was the day that the woman fell in the restroom; is that correct?
MR. KUEPPER: Objection.
A. I can't say that was the date.
 Q. I understand. But the date that we're talking about that you observed the water is the same day that the woman fell in the restroom, correct?
A. No, I didn't say that. I don't remember.
 Q. You don't remember. We were just talking about it not more than two minutes ago, and now you don't remember? Is that what you're telling me?
 A. I don't remember the date. You're saying — you keep saying May. I don't — like I said, I worked there different times. I can't say it's exactly May 5th or May 29th.
 Q. All right. I don't want to confuse you with the date, the actual date, Andrea. Am I understanding that about 10:30 on the date that a woman fell in the women's restroom at Burger King, you saw a little bit of water on the floor of the —
 A. You're asking me was there water on the floor the day the woman fell?
Q. Yes.
 A. I don't remember. I don't remember that. I don't remember.[13]
When viewing this testimony as a whole, we find Ms. Hawkins was unable to remember whether she had checked the restroom on the day of the incident. Further, the tortured progression of this testimony also indicates Ms. Hawkins was unable to remember whether there was any water on the floor on the date of the incident, even if we assume she had checked the restroom on the date of the incident.
Under these circumstances, we cannot find a record demonstration appellee had constructive notice of any substance on the restroom floor before appellant's slip. Further, without some evidence of the cause of the wetness on the floor, we cannot presume it was caused by appellee.[14] Accordingly, appellant cannot demonstrate any slippery substance on the floor existed for a sufficient period of time such that appellee's failure to warn against it or to remove it constitutes negligence.[15] Accordingly, we find no error in the trial court's decision to grant summary judgment in favor of appellee.
Appellants' sole assignment of error is overruled.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellants.
Hon. William B. Hoffman, P.J. Hon. John W. Wise, J. Hon. John F. Boggins, J. concur.
[1] Appellant's complaint was originally filed against appellee, the U.S. Department of Health and Human Services, Administar, Federal Inc., National Insurance, and United American Insurance Company and John Doe 1-5. In a May 23, 2000 Judgment Entry, the trial court noted appellant's voluntary dismissal of each of these defendants, except for appellee.
[2] Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36.
[3] Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
[4] Paschal v. Rite Aid Pharmacies, Inc. (1985), 18 Ohio St.3d 203.
[5] Id.
[6] Cleveland Athletic Association Co. v. Bending (1934),129 Ohio St. 152.
[7] Spognardi v. Scores of Mansfield, Inc. (Dec. 29, 1999), Richland App. No. 99CA56, unreported, citing Gone v. Dick Clark's AmericanBandstand Grill (Feb. 11, 1996), Franklin App. No. 96APE07-910, unreported, at 13.
[8] Presley v. Norwood (1973), 36 Ohio St.2d 29, 31.
[9] Id. at 32.
[10] Anaple v. Standard Oil Co. (1995), 162 Ohio St. 537.
[11] Depo. at 8.
[12] Depo. at 8, 13-14.
[13] Depo. at 6-7, 14-17.
[14] See, Spognardi, supra.
[15] Presley, supra at 29.